ARMSTRONG TEASDALE, LLP
Richard L. Scheff (admitted *pro hac vice*)
Jonathan P. Boughrum (admitted *pro hac vice*)
David F. Herman (admitted *pro hac vice*)
1500 Market Street, Fl. 12, East Tower
Philadelphia, PA  19102
Telephone:  (215) 246-3478
Email:  rscheff@armstrongteasdale.com
        jboughrum@armstrongteasdale.com
        dherman@armstrongteasdale.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP
ANNA S. McLEAN (Cal. Bar No. 142233)
DANIEL R. FONG (Cal. Bar No. 311985)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:     (415) 434-9100
Facsimile:     (415) 434-3947
Email:  amclean@sheppardmullin.com
        dfong@sheppardmullin.com

Attorneys for Defendants
*Haynes Investments, LLC and L. Steven Haynes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| KIMETRA BRICE, EARL BROWNE, and JILL NOVOROT, *on behalf of themselves and all individuals similarly situated,*<br><br>            Plaintiffs,<br><br>v.<br><br>KENNETH REES, GPL SERVICING, LTD., PLAIN GREEN, LLC, GREAT PLAINS LENDING , LLC, VICTORY PARK CAPITAL ADVISORS, LLC, VICTORY PARK MANAGEMENT, LLC, SCOTT ZEMNICK, JEFFREY SCHNEIDER, THOMAS WELCH, HAYNES INVESTMENTS, LLC, and L. STEPHEN HAYNES,<br><br>            Defendants. | Case No.  3:18-cv-1200-WHO<br><br>**DEFENDANT HAYNES INVESTMENTS, LLC AND L. STEVEN HAYNES' MOTION TO COMPEL ARBITRATION**<br><br>[Exhibit 'A' and [Proposed] Order Filed Concurrently Herewith]<br><br>Date:   November 14, 2018<br>Time:  2:00 p.m.<br>Room: Courtroom 2<br><br><br>Complaint filed:   February 23, 2018 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................... 1

II.     FACTS AND BACKGROUND INFORMATION ............................................................ 1

III.    ARGUMENT ..................................................................................................................... 7

     A.     Plaintiffs have agreed to arbitrate their claims against the Haynes
           Defendants. ............................................................................................................. 7

     B.     The Delegation Provision in the Arbitration Agreement requires the
           Arbitrator, not this Court, to address any issues of enforceability. ...................... 10

     C.     Even in the absence of the delegation provision, there is no basis for
           Plaintiffs to avoid having their claims sent to arbitration. ................................... 13

          1.      Plaintiffs' claims are arbitrable. ............................................................... 13

          2.      The arbitration agreements are valid and enforceable.............................. 15

                a.      The Arbitration Agreements are not unconscionable under
                    Otoe-Missouria or Chippewa Cree law. ........................................ 15

                b.      The Arbitration Agreements are valid under California law......... 17

           3.      Plaintiffs' likely arguments concerning factually distinguishable
               cases are not to the contrary. .................................................................... 19

IV.     CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Am. Exp. Co. v. Italian Colors Rest.*
   570 U.S. 228 (2013) ..................................................................................................7

*AT & T Techs., Inc. v. Commc'ns Workers of America,*
   475 U.S. 643 (1986) .............................................................................................10, 12

*Banks v. Cashcall, Inc.*
   188 F. Supp. 3d 1296 (M.D. Fla. 2016) ...................................................................12

*Brennan v. Opus Bank*
   796 F.3d 1125 (9th Cir. 2015) .................................................................................12

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*
   622 F.3d 996 (9th Cir. 2010) ...................................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*
   546 U.S. 440 (2006) .................................................................................................13

*Cape Flattery Ltd. v. Titan Maritime*
   647 F.3d 914 (9th Cir. 2011) ...................................................................................16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000) .................................................................................14

*Comer v. Micor,*
   436 F.3d 1098 (9th Cir. 2006) ...................................................................................9

*Dillon v. BMO Harris Bank, N.A.*
   856 F.3d 330 (4th Cir. 2017) ..............................................................20, 21, 22, 23

*Doctor's Assocs., Inc. v. Casarotto*
   517 U.S. 681 (1996) .................................................................................................15

*Elder v. BMO Harris Bank*
   No. JFM-13-3043, 2014 WL 1429334 (D. Md. Apr. 11, 2014) ................................9

*Epic Sys. Corp. v. Lewis*
   138 S.Ct. 1612 (2018) ................................................................................................8

*First Options of Chi., Inc. v. Kaplan,*
   514 U.S. 938 (1995) .................................................................................................10

*Gamer v. duPont Glore Forgan, Inc.*
   65 Cal. App. 3d 280 (1976) ......................................................................................16

*Gibbs, et al. v. Rees, et al.,*
   No. 3:17-cv-00386-MHL, Doc. 17 (E.D. Va. Aug. 17, 2017) ...................................2

*Green Horizon Mfg. LLC v. Meridian Working Capital*,
    No. A138781, 2014 WL 4594507 (Cal. App. Sept. 16, 2014) (unpublished) ..........................17

*Gunson v. BMO Harris Bank, N.A.*
    43 F. Supp. 3d 1396 (S.D. Fla. 2014)...............................................................................17, 21

*Hayes v. Delbert Services Corp.*
    811 F.3d 666 (4th Cir. 2016)....................................................................................20, 21, 22

*In re Henson*
    869 F.3d 1052 (9th Cir. 2017) ...........................................................................................8

*Howsam v. Dean Witter Reynolds, Inc.*
    537 U.S. 79 (2002) ...........................................................................................................10

*Hunter v. NHcash.com, LLC*
    No. 3:17CV348-HEH, 2017 WL 4052386 (E.D. Va. Sept. 12, 2017)...................................9

*Inetianbor v. Cashcall, Inc.*
    768 F.3d 1346 (11th Cir. 2014) ....................................................................................22, 23

*Jackson v. Payday Fin., LLC*
    764 F.3d. 765 (7th Cir. 2014)............................................................................................23

*Kemph v. Reddam*
    No. 13-CV-6785, 2015 WL 1510797 (N.D. Ill. Mar. 27 2015) .................................................19

*Kilgore v. KeyBank Nat. Ass'n.*
    718 F.3d 1052 (9th Cir. 2013) (en banc).....................................................................8, 14, 18

*Kramer v. Toyota Motor Corp.*
    705 F.3d 1122 (9th Cir. 2013)............................................................................................9

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*
    363 F.3d 1010 (9th Cir. 2004)........................................................................................7, 14

*M/S Bremen v. Zapata Off-Shore Co.*
    407 U.S. 1 (1972) .............................................................................................................21

*Mastrobuono v. Shearson Lehman Hutton, Inc.*
    514 U.S. 52 (1995) ...........................................................................................................19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
    473 U.S. 614 (1985) .....................................................................................................21, 23

*Momot v. Mastro*
    652 F. 3d 982 (9th Cir. 2011)...................................................................................10, 11, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ..........................................................................................................8, 14

*Mundi v. Union Sec. Life Ins. Co.*
    555 F.3d 1042 (9th Cir. 2009).............................................................................................8

*Murphy v. DirecTV, Inc.*
    724 F.3d 1218 (9th Cir. 2013) ............................................................8, 9

*PaineWebber, Inc. v. Bybyk*
    81 F.3d 1193 (2d Cir. 1996) ...................................................................12

*Parnell v. CashCall Inc.*
    804 F.3d 1142 (11th Cir. 2015) ..............................................................11

*Petters Co. v. BLS Sales Inc.*,
    No. C 04-02160 CRB, 2005 WL 2072109 (N.D. Cal. Aug. 26, 2005) ....................17

*Rent–A–Center, West, Inc. v. Jackson*
    561 U.S. 63 (2010) .........................................................................8, 12

*Rent-A-Center, West, Inc. v. Jackson*
    651 U.S. 63 (2010) .......................................................................10, 11

*Rota-McLarty v. Santander Consumer USA, Inc.*
    700 F.3d 690 (4th Cir. 2012) ..................................................................14

*Sanchez v. Valencia Holdings Co., LLC*
    353 P.3d 741 (Cal. 2015) .......................................................................18

*Simula, Inc. v. Autoliv, Inc.*
    175 F.3d 716 (9th Cir. 1999) ..................................................................14

*Sleeper Farms v. Agway, Inc.*
    506 F.3d 98 (1st Cir. 2007) ...................................................................13

*Ury v. Jewelers Acceptance Corp.*
    227 Cal. App. 2d 11 (1964) ....................................................................17

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*
    515 U.S. 528 (1995) ...........................................................................23

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) .........................................................................7, 8

Statutes

9 U.S.C.
    § 1, *et seq*............................................................................................7
    § 2 .................................................................................7, 8, 13, 15
    § 3 .....................................................................................8, 10
    § 4 ................................................................................8, 11, 24
    § 9 ..........................................................................................23
    § 10 .........................................................................................23

10 U.S.C.
    § 987 .......................................................................................21

12 U.S.C.
   § 1829b................................................................................................................21
   § 1951-1959.........................................................................................................21
   § 5301 et seq.......................................................................................................20
   § 5481 *et seq.*....................................................................................................21
   § 5531, *et seq.*..................................................................................................21

15 U.S.C.
   § 1601 *et seq.*...................................................................................................21
   § 1666a................................................................................................................21
   § 1667 *et seq.*...................................................................................................21
   § 1681 et seq.......................................................................................................21
   § 1691 et seq.......................................................................................................21
   § 1692 et seq..................................................................................................21, 22
   § 1693 *et seq.*...................................................................................................21
   § 6801 *et seq.*...................................................................................................21
   § 7001 *et seq.*...................................................................................................21
   § 7701 *et seq.*...................................................................................................21

18 U.S.C.
   § 1960..................................................................................................................21

31 U.S.C.
   § 5311 *et seq.*,..................................................................................................21

47 U.S.C.
   § 227..............................................................................................................21, 22

50 U.S.C. App.
   § 501 *et seq.*.....................................................................................................21

Chippewa Cree Tribal Lending and Regulatory Code
   § 10-3-602, (www.plaingreenloans.com/css/title10.pdf) ........................................16
   § 10-4-108(c)........................................................................................................21
   § 10-6-101(b)........................................................................................................22

Otoe-Missouria Tribal Consumer Financial Services Ordinance
   § 5.2(a), (http://www.omtribe.org/useruploads/files/approved_ordinance_2018_pdf.pdf
   )...................................................................................................................20, 21
   § 5.2(c) ................................................................................................................16

Other Authorities

12 C.F.R.
   § 205....................................................................................................................21
   § 213 *et seq.*......................................................................................................21
   § 222....................................................................................................................21
   § 226....................................................................................................................21

15 C.F.R.
   § 202....................................................................................................................21

16 C.F.R.
   § 310 ................................................................................................................21
   § 313 ................................................................................................................21
   § 314 ................................................................................................................21
   § 901 ................................................................................................................21

25 C.F.R.
   § 11.500 (2012 ............................................................................................17, 22

32 C.F.R.
   § 232 ................................................................................................................21

47 C.F.R.
   § 64.1200 *et seq.* ...........................................................................................21

American Arbitration Association Consumer Arbitration Rules, R-29 ..............................6

https://www.adr.org/ (July 16, 2018) ..................................................................23

https://www.jamsadr.com/ (July 16, 2018) ...........................................................23

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on November 14, 2018 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick, United States District Court Judge, in Courtroom 2 – 17th Floor of the United States District Court for the Northern District of California, San Francisco, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants L. Steven Haynes and Haynes Investments, LLC (collectively the "Haynes Defendants") will and hereby do move this Court for an order compelling arbitration of Plaintiffs Kimetra Brice, Earl Browne, and Jill Novorot's (collectively "Plaintiffs") Complaint claims on an individual basis pursuant to the arbitration agreement present in Plaintiffs' loan agreements.

The Motion is brought pursuant to Section 4 of the Federal Arbitration Act on the grounds that the Court must compel arbitration where a valid agreement to arbitrate exists.  This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all papers and records on file herein, and such other matters as may be presented to the Court at or before the hearing on this Motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Must Plaintiffs be compelled to arbitrate their case against the Haynes Defendants – an entity and an individual alleged to have loaned money and assisted a Native American lender that provided a loan to Plaintiffs – where Plaintiffs' loan agreements all contain valid and enforceable agreements to arbitrate all disputes arising out of that loan agreement?

2. To the extent that Plaintiffs challenge their agreement to arbitrate all disputes arising out of the loan agreement, must any dispute as to the arbitrability of that dispute be submitted to an arbitrator in the first instance where the arbitration agreements contain a valid and enforceable delegation provision and a broad definition of what constitutes a dispute?

DATED:  October 10, 2018

By    */s/ Anna S. McLean*_____

Anna S. McLean (Cal. Bar No. 142233)
Daniel R. Fong (Cal. Bar No. 311985)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:    (415) 434-9100
Facsimile:    (415) 434-3947

Richard L. Scheff (admitted *pro hac vice*)
Jonathan P. Boughrum (admitted *pro hac vice*)
David F. Herman (admitted *pro hac vice*)
ARMSTRONG TEASDALE, LLP
1500 Market Street, Fl. 12, East Tower
Philadelphia, PA  19102
Telephone:  215.246.3478

Attorneys for Defendants
*L. Steven Haynes and Haynes Investments, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiffs have filed this putative class action alleging that their loans constitute "unlawful debt" under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and California law.   As explained in their Motion to Dismiss, which is which is being filed contemporaneously with this Motion, the Haynes Defendants contend that this Court lacks personal jurisdiction over them.   Furthermore, the Haynes Defendants contend that Plaintiffs' substantive claims have no legal merit; the debt at issue is not "unlawful," and therefore the Court should alternatively dismiss this case for failure to state a claim.

Yet, the Haynes Defendants do *not* contend that Plaintiffs are entirely without recourse. To be sure, adjudication of Plaintiffs' claims cannot come from this Court; nor can it come in a class proceeding.   However, Plaintiffs *can* take their claims to arbitration on an individual basis—just as they agreed to do in each of their consumer loan agreements.   In individual arbitration, Plaintiffs have the ability to pursue any and all relevant claims against the Haynes Defendants, and the arbitrator can resolve those claims—or any other dispute between Plaintiffs and the Haynes Defendants. But Plaintiffs have not done so.  Instead, Plaintiffs have ignored the plain language of their consumer loan agreements and have sought relief in this forum, rather than the arbitral one they contracted for in their loan agreements.   As such, the FAA requires that this Court send Plaintiffs' claims against the Haynes Defendants to arbitration, as is required by the terms of the arbitration agreements to which Plaintiffs voluntarily and expressly agreed.

**II.    FACTS AND BACKGROUND INFORMATION**

Plaintiffs each voluntarily used the internet to obtain at least one short term loan from either Plain Green, LLC, or non-defendant Great Plains Lending, LLC (the "Native American Lenders")—each an arm of a sovereign Native American tribe (Plain Green being an arm of the Chippewa Cree Tribe of the Rocky Boys' Reservation, Montana, and Great Plains being an arm of the Otoe-Missouria Tribe in Oklahoma). Compl. at ¶ 138-140; Exhs. 12-13.   Each Plaintiff went to one of the Native American Lenders' websites and completed an online

application.  *See* **Exhibit "A,"** Decl. of Stephen Smith at ¶¶ 9-10 (which Declaration was filed by Think Finance in support of its motion to compel arbitration in *Gibbs, et al. v. Rees, et al.*, No. 3:17-cv-00386-MHL, Doc. 17 (E.D. Va. Aug. 17, 2017) (the "Think Finance Litigation").[1]  Plaintiffs completed the loan application form, chose a date of payment and a loan amount, and reviewed and agreed to the terms and conditions of the loans, including arbitration agreements. *See* Smith Decl. at ¶¶ 11-12. At the end of the application process, Plaintiffs were provided with a copy of their loan agreement, which they could print or save. *See* Smith Decl. at ¶ 13.  Plaintiffs' applications were then sent to the Native American Lenders for final processing, decisioning, and, if approved, funding.

While Plaintiff Novorot's and Plaintiff Brice's Great Plains loan agreements with Great Plains Lending, LLC were attached as exhibits to the Complaint (Compl. at Exhs. 12-13), Plaintiff Browne's loan agreements with Plain Green, LLC, were conspicuously not attached to the Complaint.    Numerous other Plain Green loan agreements, identical in their requirement that Plaintiffs arbitrate all disputes arising out of their loan agreements, have been produced by Plaintiffs in other cases—including in cases where plaintiffs are represented by the same counsel that represents Plaintiffs in this matter.  *See, e.g.,* Decl. of Stephen Smith at Exhibit 2 (October 5, 2016 loan agreement between Lula Williams and Plain Green, LLC (the "Williams Plain Green loan agreement")).[2]    In each of Plaintiffs' loan agreements with the Native American lenders, Plaintiffs agreed to arbitrate "any claim or controversy of any kind" between the consumer and either Plain Green, LLC or Great Plains, LLC, together with those companies' "agents, servicers, vendors or any third party." Brice Great Plains loan agreement,

---

[1] As is acknowledged throughout the Complaint, Think Finance was a company that assisted both Plain Green, LLC, and Great Plains Lending, LLC, to offer their loan products to consumers.

[2] To the Extent Plaintiff Browne disputes that his loan agreement differs materially from the other Plain Green loan agreements, he must produce his loan agreement(s) with Plain Green.

Compl. at Exh. 12 at 6; *see also* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 9 (same); Williams Plain Green loan agreement; Exh. A, Smith Decl. at Exhibit 2 at 9 (same).[3]

Although the loan agreements Plaintiffs entered into with the Native American Lenders were worded and formatted slightly differently in places, each contained the same essential provisions regarding arbitration. Each agreement made expressly clear at the outset that the Plaintiffs were entering into transactions with a sovereign Native American Tribe (the Chippewa Cree Tribe in the case of loans originated by Plain Green, LLC, and the Otoe-Missouria Tribe in the case of loans originated by Great Plains Lending, LLC). Compl. at Exh. 12 at 2; *see also* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 2 (same); Williams Loan Agreement; Exh. A, Smith Decl. at Exhibit 2 at 9 (same).

On the first page of each consumer loan agreement between Plaintiffs and their chosen Native American Lender, and under a header containing the words "**IMPORTANT DISCLOSURE**," it is clearly and conspicuously disclosed that the "Lender" selected by Plaintiffs is a Native American tribe. For example, in the Great Plains agreement signed by Plaintiff Brice, that section reads:

> **PLEASE READ THIS DISCLOSURE CAREFULLY BEFORE SIGNING THIS AGREEMENT. LENDER IS AN ARM OF THE TRIBE, IT IS A COMMERCIAL ENTITY FORMED PURSUANT TO TRIBAL LAW, IT IS OWNED AND OPERATED BY THE TRIBE AND IT FUNCTIONS AS A NON-PROFIT COMMERCIAL ENTITY OF THE TRIBE, FORMED FOR THE EXPRESS PURPOSE OF ECONOMIC DEVELOPMENT. BOTH THE LENDER AND THE TRIBE ARE IMMUNE FROM SUIT IN ANY COURT UNLESS THE TRIBE, THROUGH ITS TRIBAL COUNCIL, EXPRESSLY WAIVES THAT IMMUNITY THROUGH A FORMAL, WRITTEN RESOLUTION OF THE TRIBE'S TRIBAL COUNCIL. THE LENDER IS REGULATED BY THE TRIBE'S CONSUMER FINANCE SERVICES REGULATORY COMMISSION (THE "COMMISSION"). YOUR RIGHT TO SUBMIT COMPLAINTS IS LIMITED TO THE DISPUTE RESOLUTION PROCESS SET FORTH IN THIS AGREEMENT AND TO THE COMMISSION IN**

---

[3] For purposes of this Motion, the Haynes Defendants refer to the pagination of the exhibits to the Smith Declaration using the page numbers stamped by the Court's ECF filing system at the top of each page.

**ACCORDANCE WITH THE TRIBE'S CONSUMER LENDING CODE AND ACCOMPANYING REGULATIONS, IF ANY.**

Brice Great Plains loan agreement, Exh. 12 at 2 (emphasis in original).

Plaintiffs' loan agreements each include a section titled "GOVERNING LAW; NON-APPLICABILITY OF STATE LAW; INTERSTATE COMMERCE," which clearly provide for the application of tribal law to any dispute involving the agreements. *See* Brice Great Plains loan agreement Compl. at Exh. 12 at 6; *see also* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 8 (same); Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 9 (same). Consumers are also expressly warned on the first page of their loan agreement:

 "**IF YOU WISH TO HAVE YOUR RESIDENT STATE LAW APPLY TO ANY LOAN THAT YOU TAKE OUT, YOU SHOULD CONSIDER TAKING A LOAN FROM A LICENSED LENDER IN YOUR STATE.**" *See, e.g.,* Brice Great Plains loan agreement, Exh. 12 at 2 (emphasis in original).

As noted above, the Plain Green and Great Plains agreements also contain detailed and conspicuous agreements to submit all such disputes to arbitration (the "Arbitration Agreement"). Pursuant to the Arbitration Agreement, Plaintiffs agreed to submit "ANY DISPUTE . . . RELATED TO THIS AGREEMENT" to binding arbitration.  Brice Great Plains loan agreement Compl. at Exh. 12 at 6; *see also* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 9 (same); Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 9 (same). Under the loan agreements, a Dispute is "is to be given its broadest possible meaning and includes, without limitation, all federal, state or Tribal law claims or demands (whether past, present, or future), based on any legal or equitable theory and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief)."   Novorot Great Plains loan agreement, Compl. at Exh. 13 at 9; Brice Great Plains loan agreement Compl. at Exh. 12 at 6; Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 9.  Plaintiffs' loan agreement also includes a "delegation clause," which provided that the term "Dispute" "includes any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement

to Arbitrate." *Id.* Put another way, threshold issues relating to arbitrability are delegated to the arbitrator in the first instance.

The Arbitration Agreement clearly and conspicuously describes arbitration as the process of having an independent third party resolve a dispute, and explains that by entering into the Arbitration Agreement, Plaintiffs waive certain rights that are typically available to private litigants, including:

> **THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION RULES), AND TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS OR IN ANY CONSOLIDATED ARBITRATION PROCEEDING OR AS A PRIVATE ATTORNEY GENERAL.**

Novorot Great Plains loan agreement, Compl. at Exh. 13 at 9; Brice Great Plains loan agreement Compl. at Exh. 12 at 6 (emphasis in original); Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 9. This explanation is preceded by the admonition that the Plaintiffs should "**CAREFULLY READ THIS AGREEMENT TO ARBITRATE,**" and noted that, "**UNLESS YOU EXERCISE YOUR RIGHT TO OPT-OUT OF ARBITRATION AS DESCRIBED ABOVE, YOU AGREE THAT ANY DISPUTE YOU HAVE RELATED TO THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION**." *Id.* (emphasis in original).

The Arbitration Agreement is designed to streamline the dispute resolution process in a cost-effective and fair manner. To that end, it includes many provisions that make it quick and simple for consumers to bring a claim. If a consumer has a dispute that cannot be resolved informally, they may commence an arbitration proceeding by choosing one of several nationally recognized arbitration firms: in the case of the Plain Green agreement, the American Arbitration Association ("AAA") or JAMS, The Resolution Experts ("JAMS"), and in the case of Great Plains, the International Institute for Conflict Prevention & Resolution ("CPR") or JAMS. Brice Great Plains loan agreement Compl. at Exh. 12 at 6; *see also* Novorot Great Plains loan

agreement, Compl. at Exh. 13 at 9-10; Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 9-10.  The customer has the option of having arbitration conducted either within thirty (30) miles of their current residence or on tribal land. Alternatively, consumers may also participate in arbitration telephonically or by other electronic means, thereby minimizing travel costs.  *Id.*  And, under the consumer arbitration rules, which are expressly incorporated into the terms of the Arbitration Agreement, consumers may also select to arbitrate their claims through a papers-only "desk" arbitration.  *See, e.g.*, American Arbitration Association Consumer Arbitration Rules, R-29.  Additionally, all filing fees and costs of arbitration are paid by Plain Green or Great Plains.  Brice Great Plains loan agreement Compl. at Exh. 12 at 6; *see also* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 9-10; Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 9-10.

Moreover, Plaintiffs had the opportunity to opt out of the Arbitration Agreement if they desired, so long as they notified Plain Green or Great Plains in writing within sixty (60) days of the date the loan agreement was entered into.  In fact, the ability to opt-out is forefront to the Arbitration Agreement.   The first two sentences of the Arbitration Agreement read: "**This Agreement includes the following binding Waiver of Jury Trial and Arbitration Agreement (the "Agreement to Arbitrate").   You may opt out of the Agreement to Arbitrate by following these instructions: . . .**" Brice Great Plains loan agreement Compl. at Exh. 12 at 6; *see also* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 8; Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 8.  The first paragraph then begins with the capitalized point heading "***RIGHT TO OPT-OUT:*** . . ." *Id.*  (bold and italics in original).  The written opt-out correspondence could be sent either by regular mail or by e-mail.

In sum, on multiple occasions before finalizing and agreeing to the terms of their loans, Plaintiffs consented to the Arbitration Agreements and affirmed that:

- any dispute, including past disputes, between Plaintiffs and their Lender, servicer, vendor or other third-party, along with any officer, employee, or manager of those entities, would be arbitrated unless Plaintiffs exercised their right to opt-out from the arbitration procedure within sixty days;

- any arbitration would take place, at Plaintiffs' choice, on tribal land or within 30 miles of their residence;

- the Lender would pay the costs of arbitration;

- any arbitration would be administered, at Plaintiffs' election, at one of several highly qualified, professional arbitration associations, or any other arbitration association which was mutually agreeable to the parties;

- the arbitration would be governed, by the laws of either the Otoe-Missouria Tribe or the Chippewa Cree Tribe;

- the arbitrator, not a court, would make gateway determinations about the arbitrability of any disputes; and

- Plaintiffs had the opportunity to opt out of the arbitration provision.

The provisions of the Arbitration Agreements were conspicuously and repeatedly disclosed to Plaintiffs in their loan agreements. Plaintiffs had no barriers to access arbitration to resolve any dispute. Yet, despite these clear protections and contractual obligations, Plaintiffs did not pursue their claims in the arbitral forum required by their loan agreements.  Instead, Plaintiffs instituted this lawsuit.

## III.   ARGUMENT

### A.   Plaintiffs have agreed to arbitrate their claims against the Haynes Defendants.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs the validity and enforcement of arbitration provisions in contracts involving transactions in interstate commerce and was crafted to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate . . . and place such agreements upon the same footing as other contracts." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011-12 (9th Cir. 2004) (citing *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)) (internal quotation marks and citations omitted).   Under the FAA, agreements to arbitrate are presumptively valid, 9 U.S.C. § 2, and courts are required to "rigorously enforce arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks and citation omitted).  Arbitration provisions must therefore be

"enforce[d] … according to their terms," and may only be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (internal quotation marks and citation omitted). Outside of these limited concerns, however, "parties are generally free to structure their arbitration agreements as they see fit." *Volt*, 489 U.S. at 479.  As the Supreme Court has recently and repeatedly reaffirmed, "[n]ot only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures."  *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1621 (2018).  Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that Section 2 of the FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements").

Where a court is satisfied that the parties agreed to arbitrate a dispute, a district court must grant a motion to compel arbitration. 9 U.S.C. §§ 3, 4; *see also, e.g.*, *Kilgore v. KeyBank Nat. Ass'n.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) ("The FAA mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").  "The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Kilgore*, 718 F.3d at 1058 (internal quotation marks and citations omitted).  Furthermore, it is well established that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate.  *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046-47 (9th Cir. 2009); *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1228-29 (9th Cir. 2013); *In re Henson*, 869 F.3d 1052, 1060-61 (9th Cir. 2017).

Here, the Haynes Defendants can enforce the Arbitration Agreements.  First, Plaintiffs' claims are plainly covered by the Arbitration Agreements' expansive definition of "Disputes." By their very terms, the Arbitration Agreements apply to any "Dispute" between Plaintiffs and

the Lenders, agents, servicers, vendors or any third party—along with "each of their respective agents, representatives, employees, officers, directors, members, managers, attorneys, successors, predecessors, and assigns." Brice Loan Agreement (Smith Decl., Exhibit 1 at 8); Browne Loan Agreement (Smith Decl., Exhibit 2 at 9); Novorot Loan Agreement (Smith Decl., Exhibit 1 at 8) *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (because arbitration is a matter of contract law, parties may only be required to submit to arbitrate disputes that they agreed to so submit); *Hunter v. NHcash.com, LLC*, No. 3:17CV348-HEH, 2017 WL 4052386, at *6-*7 (E.D. Va. Sept. 12, 2017) (finding, in similar circumstances, that claims against service provider to online lender were within the scope of the arbitration provision at issue).

Second, the Haynes Defendants, even as non-signatories, are entitled to enforce the agreements to arbitrate under equitable principles as the basis for Plaintiffs' suit, the alleged illegal loans and interest rates contained therein, is intertwined with the loan and Arbitration Agreements. A litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Under California contract law, equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes. *See Kramer*, 705 F.3d at 1128-29 (citing *Comer v. Micor*, 436 F.3d 1098, 1101 (9th Cir. 2006). "Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *See Kramer*, 705 F.3d at 1128-29 (internal quotation marks and citations omitted); *see also Elder v. BMO Harris Bank*, No. JFM-13-3043, 2014 WL 1429334, at *1 (D. Md. Apr. 11, 2014) (finding nonsignatory could enforce arbitration agreement because the

plaintiff "must rely on the terms of the written agreement in which the arbitration clause is contained because it is that agreement that contains the allegedly usurious interest provision upon which this lawsuit is based").

Accordingly, a valid agreement to arbitrate exists, binds Plaintiffs, and may be enforced by the Haynes Defendants.

**B.      The Delegation Provision in the Arbitration Agreement requires the Arbitrator, not this Court, to address any issues of enforceability.**

Because a valid agreement to arbitrate exists and may be enforced by the Haynes Defendants, the Court should stay this matter and send all of Plaintiffs' disputes to arbitration.  9 U.S.C. § 3; *see also Momot v. Mastro*, 652 F. 3d 982, 986 (9th Cir. 2011).  Under the plain terms of the Arbitration Agreements, this includes arbitration of any Disputes over the enforceability of the Arbitration Agreements themselves. *See*  Brice Great Plains loan agreement, Compl. at Exh. 12 at 6 ("A Dispute includes any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate."); *see also* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 9 (same); Williams Plain Green loan agreement; Exh. A, Smith Decl. at Exhibit 2 at 9 (same).

Parties may determine by contract whether the arbitrator or the court decides a particular issue, including the question of whether a particular matter is arbitrable.  *See Rent-A-Center, West, Inc. v. Jackson*, 651 U.S. 63, 69-70 (2010).  "Although the gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator."  *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (relying on *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82 (2002)).  "[T]he question of arbitrability is left to the court unless the parties clearly and unmistakably provide otherwise."  *Id*. at 988.  The Ninth Circuit applies a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability, requiring that courts "not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."  *Id*. at 987-88 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) quoting *AT & T Techs., Inc. v. Commc'ns Workers of America,* 475 U.S. 643, 649 (1986)) (alterations omitted)).

The terms of the arbitration agreement establish whether issues of arbitrability are reserved for the arbitrator. *Id.* at 988.

The Ninth Circuit in *Momot* found clear and unmistakable evidence that the parties agreed to arbitrate abitrability when they agreed to the following "delegation clause" language in their arbitration provision:

4. *Resolution of Disputes.*

(a) *Arbitration*. If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4,* and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding **arbitration**.

*Id.* (emphasis in the original). The Ninth Circuit found that "this language, delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause, constitutes an 'agreement to arbitrate threshold issues concerning the agreement.'" *Id.* (citation omitted). "In other words, the parties clearly and unmistakably agreed to arbitrate the question of arbitrability." *Id.* "[C]ourts must enforce the parties' 'agreement to arbitrate threshold issues' regarding the arbitrability of their dispute, and may do so by staying federal litigation under section 3 of the FAA or compelling arbitration under section 4." *Rent-A-Center, West, Inc. v. Jackson*, 651 U.S. 63, 69-70 (2010).

Here, there can be no realistic debate that the parties clearly and unmistakably agreed that an arbitrator would decide threshold issues relating to the enforceability of the Arbitration Agreement. As noted above, the plain language of the Agreements explicitly requires that any issue concerning the validity, enforceability, or scope of this loan or the Arbitration Agreement, be submitted to the arbitrator and be decided by the arbitrator in the first instance. Identical language has already been held to constitute a valid and enforceable delegation provision. *See Parnell v. CashCall Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015) (finding a clear delegation clause in language which states that an arbitrable dispute includes "any issue concerning the validity,

enforceability, or scope of this loan or the Arbitration agreement."); *accord AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Rent-A-Center*, 561 U.S. at 69 (finding similar delegation provision to that at issue here valid and effective); *Banks v. Cashcall, Inc.*, 188 F. Supp. 3d 1296, 1300 (M.D. Fla. 2016) (similar); *see also PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1199-1200 (2d Cir. 1996) (ruling that where an arbitration provision indicates an intent to arbitrate "any and all" claims, it reflects a "broad grant of power to the arbitrators" that evidences the parties' clear "inten[t] to arbitrate issues of arbitrability").

If this explicit delegation clause were not enough, the arbitration agreement also incorporates the rules of AAA or JAMS (in the case of Plain Green borrowers) or CPR or JAMS (in the case of Great Plains borrowers)—at the Plaintiffs' election—to govern any arbitration of Disputes between the parties. Brice Loan Agreement (Smith Decl., Exhibit 1 at 8); Browne Loan Agreement (Smith Decl., Exhibit 2 at 9); Novorot Loan Agreement (Smith Decl., Exhibit 1 at 8). The Ninth Circuit, joining virtually every circuit, found that incorporation of the AAA rules— which gives the arbitrator the power to rule on any objections with respect to the validity of the arbitration agreement—in an arbitration agreement constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (applying to sophisticated parties).   Both the broad and encompassing language of the express delegation clause, as well as the incorporation of the consumer rules from one of CPR, AAA, or JAMS, demonstrate a clear and unmistakable intent to have an arbitrator – not this Court – determine any and all disputes relating to enforceability.

Because a clear and unambiguous delegation provision exists within the Arbitration Agreements, this Court may only determine threshold issues of arbitrability if Plaintiffs make a direct and specific challenge to the validity of the delegation provision itself.  A mere broad challenge to the validity of the arbitration agreement "as a whole" is insufficient. *Rent-A-Center*, 561 U.S. at 71-73; *accord Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000-01 (9th Cir. 2010) ("In other words, when a plaintiff's legal challenge is that the contract as a whole is unenforceable, the arbitrator decides the validity of the contract, including derivatively the validity of its constituent provisions (such as the arbitration clause).").

Plaintiffs, however, fail to even make a broad challenge to the issue of arbitrability, let alone any reference or challenge to the delegation provision specifically.  Instead, Plaintiffs merely assert a broad challenge to the loan agreements generally.

For example, Plaintiffs' make repeated challenges to the arbitration agreement based upon the assertion that the loans are "null and void," under the provisions of the California Constitution or the California Civil Code.  Compl. at ¶¶ 6, 29, 137, 214.  But courts have specifically considered that precise challenge and found such arguments do not to act as a challenge to a delegation provision itself, but rather to the agreement as a whole. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Sleeper Farms v. Agway, Inc.*, 506 F.3d 98, 103 (1st Cir. 2007) ("As a matter of federal law, the arbitration clause is unaffected even if the substance of the contract is otherwise void or voidable.").  Accordingly, Plaintiffs' *general* challenge to *the loan* must be compelled to arbitration.

Because the Arbitration Agreements contain a valid and enforceable delegation provision that Plaintiffs have not directly or specifically challenged, the Haynes Defendants' Motion must be granted and the issue of arbitrability submitted to an arbitrator.

**C.     Even in the absence of the delegation provision, there is no basis for Plaintiffs to avoid having their claims sent to arbitration.**

*1.     Plaintiffs' claims are arbitrable.*

Even if the Court were to find that Plaintiffs can muster a direct and valid challenge to the delegation provision sufficient to warrant this Court deciding whether Plaintiffs' claims are arbitrable—and there is nothing that would suggest such an argument is possible—the Haynes Defendants' Motion to Compel Arbitration should still be granted. Plaintiffs' claims fall squarely within the plain language of the Arbitration Agreements. Those Arbitration Agreements are valid and enforceable under applicable law.

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In passing the FAA, Congress established a strong national policy in favor of arbitration.

*See, e.g., Momot*, 652 F.3d at 986.  In evaluating a motion to compel under the FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  In the Ninth Circuit, in determining whether to grant a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue."  *Kilgore*, 718 F.3d at 1058 (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).   "If the answer is yes to both questions, the court must enforce the [arbitration] agreement." *See Lifescan*, 363 F.3d at 1012. The Haynes Defendants readily satisfy this test.

Here, the loan agreements necessarily implicate interstate commerce as the loan agreements were entered into between the Native American Lenders—each arm-of-the-tribe entities owned by sovereign Native American tribes located on tribal lands in Oklahoma or Montana—and Plaintiffs, who are all citizens of California. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (finding interstate commerce implicated in consumer finance agreements between an out-of-state finance company and an in-state consumer); *see* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 8 (expressly providing that Plaintiff agrees that the loan agreement "involved interstate commerce for all purposes."); Brice Great Plains loan agreement Compl. at Exh. 12 at 6 (same); Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 8 (same).  As such, the FAA applies to broadly enforce this Arbitration Agreement.

Next, Plaintiffs entered into loan agreements with the Native American Lenders containing binding Arbitration Agreements through which Plaintiffs agreed to arbitrate "any controversy or claim" between themselves and the Native American Lenders or any related agent, servicer, third party. The filing of this action evidences a Dispute, and as explained *supra.* the Haynes Defendants may appropriately invoke the arbitration agreement despite their status as nonsignatories.

Finally, Plaintiffs' claims are all expressly predicated on their loan agreements and therefore fall squarely within the claims Plaintiffs agreed to arbitrate.  *See Simula, Inc. v.*

1    *Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999) ("Every court that has construed the phrase

2    'arising in connection with' in the arbitration clause has interpreted that language broadly" and

3    thus, the Ninth Circuit likewise construes the language to reach "every dispute between the

4    parties having a significant relationship to the contract and all disputes having their origin or

5    genesis in the contract.")   The Arbitration Agreements at issue here similarly require arbitration

6    of any "Dispute" which is defined as "any claim or controversy of any kind . . . *involving* this

7    Agreement or the Loan." (emphasis added).

8         Such language broad language clearly indicates that the current dispute between the

9    Plaintiffs and the Haynes Defendants fall within the definition of "Dispute" within the

10   arbitration agreement.   As such, Plaintiffs claims are within the scope of the arbitration

11   agreement.

12              2.    *The arbitration agreements are valid and enforceable.*

13        Under Section 2 of the FAA, "[g]enerally applicable contract defenses, such as fraud,

14   duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ." *Doctor's*

15   *Assocs., Inc. v. Casarotto*, 517 U.S. 681, 682 (1996).   Plaintiffs have made no specific

16   allegations in the Complaint claiming that the Arbitration Agreements are invalid for any of

17   these reasons, mustering only their general belief that the loan agreements—as a whole—are

18   "null and void." Compl. at ¶¶ 6, 29, 137, 214.   There are no allegations that the Arbitration

19   Agreement, as opposed to the contract as a whole, is subject to a generally applicable contract

20   defense.   Notwithstanding this flaw, Plaintiffs fail to demonstrate that the Arbitration

21   Agreements are subject to any generally accepted contract defense for the self-evident reason

22   that the Arbitration Agreements are valid and enforceable under either Tribal or California law.

23              a.    The Arbitration Agreements are not unconscionable under Otoe-

24                    Missouria or Chippewa Cree law.

25        Plaintiffs have failed to demonstrate that the Arbitration Agreement is unconscionable

26   under either Otoe-Missouria law or the laws of the Chippewa Cree Tribe, as provided for by the

27   "Governing Law" section of the loan agreements. *See* Novorot Great Plains loan agreement,

28

1  Compl. at Exh. 13 at 8; Brice Great Plains loan agreement Compl. at Exh. 12 at 6 (emphasis in

2  original); Williams Plain Green loan agreement, Exh. A, Smith Decl. at Exhibit 2 at 8.

3        Courts   routinely   enforce   choice-of-law   provisions   contained   within   arbitration

4  agreements. *See generally Cape Flattery Ltd. v. Titan Maritime*, 647 F.3d 914, 919 (9th Cir.

5  2011) (choice of law provisions in arbitration agreements should be enforced because the FAA

6  simply  requires  courts  to  enforce  privately  negotiated  agreements  to  arbitrate,  like  other

7  contracts, in accordance with their terms).

8        Under Otoe-Missouria law, a loan may be declared unconscionable only if "the

9  underlying Agreement was formed through improprieties in the process of its construction and

10  formation or the actual terms are unduly harsh, commercially unreasonable, or grossly unfair

11  given  the  existing  circumstances."   Otoe-Missouria  Tribal  Consumer  Financial  Services

12  Ordinance § 5.2(c).  And, under the laws of the Chippewa Cree Tribe, "[a] mandatory arbitration

13  clause that complies with the applicable standards of the American Arbitration Association must

14  be presumed to not violate," the prohibition against oppressive, unconscionable, and unfair

15  arbitration agreements.  Chippewa Cree Tribal Lending and Regulatory Code, § 10-3-602.[4]   No

16  such allegations are present in Plaintiffs' Complaint.

17        Plaintiffs also fail to allege that the choice of Otoe-Missouria law or choice of Chippewa

18  Cree  law  contravenes  the  public  policy  of  California  (or  provide  any  factual  allegations  in

19  support of such a claim).  It does not.  As numerous California courts have pointed out, while

20  there is a public policy against usury, there is "no strong public policy against a particular rate of

21  interest so long as the charging of that rate is permitted by law to the specific lender." *Gamer v.*

22  _____

23  [4] Section 10-3-602 of the Chippewa Cree Tribal Lending and Regulatory code, available online

24  at www.plaingreenloans.com/css/title10.pdf reads:

      10-3-602 Arbitration.

25     a.  A Loan Agreement may not contain a mandatory arbitration clause that is

26         oppressive, unconscionable, unfair, or in substantial derogation of a Consumer's
          rights.

27     b.  A mandatory arbitration clause that complies with the applicable standards of the

28         American Arbitration Association must be presumed to not violate the provisions
          of § 10-3-602(a).

*duPont Glore Forgan, Inc.*, 65 Cal. App. 3d 280, 287 (1976).  Indeed, numerous state and federal courts in California have enforced choice-of-law provisions in loan contracts notwithstanding that the selected forum requires payment of interest at rates above those permissible under California law.  *See Petters Co. v. BLS Sales Inc.*, No. C 04-02160 CRB, 2005 WL 2072109 at *4-5 (N.D. Cal. Aug. 26, 2005) (enforcing choice of Minnesota law provision over objection that chosen law did not recognize usury defense and would thus violate fundamental public policy of California because there was a substantial relationship to the chosen forum and Minnesota law was "similar in purpose and effect to California's decision to exempt certain classes of financial institutions."); *Green Horizon Mfg. LLC v. Meridian Working Capital*, No. A138781, 2014 WL 4594507, at *4-5 (Cal. App. Sept. 16, 2014) (unpublished) (enforcing choice-of-law clause selecting the laws of Arizona in favor of unlicensed lender even where Arizona permitted higher interest rates and fewer statutory exceptions than the usury laws of California); *Ury v. Jewelers Acceptance Corp.*, 227 Cal. App. 2d 11, 20 (1964) (noting in conflict of laws analysis performed under California law that given the numerous statutory exceptions to California Constitutional provision addressing usury, "California does not have such a strong public policy against any and all contracts which would be usurious if they were made and to be performed here…"). This should end the inquiry, as there is no conflict between the laws of California and the laws selected by the parties.[5]

    b.    The Arbitration Agreements are valid under California law.

        Even if this Court disregards the choice-of-law provisions in the Arbitration Agreements, it should still enforce the Arbitration Agreements because they are both procedurally and

---

[5] Furthermore, to the extent Chippewa Cree and Otoe-Missouria Tribal law does not address a specific legal issue or additional authority is needed, including on unconscionability, both tribes adopt federal and Montana or Oklahoma law. *See Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1400 n.2 (S.D. Fla. 2014) ("Under Chippewa Cree tribal law, the Court 'may apply laws and regulations of the United States or the State of Montana.'"); Courts of Indian Offenses and Law and Order Code, 25 C.F.R. § 11.500 (2012) (stating that in Otoe-Missouria civil cases "any laws of the United States may apply" and "matters that are not covered by the laws or customs of the tribe, or by applicable Federal laws and regulations, may be decided by the Court of Indian Offenses according to the laws of the State in which the matter in dispute lies").

substantively fair under California law. In California, the unconscionability doctrine ensures that contracts will not be enforced if there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" such that enforcement would "shock the conscience." *Sanchez v. Valencia Holdings Co., LLC*, 353 P.3d 741, 748 (Cal. 2015). Contractual provisions are unenforceable if they are both procedurally and substantively unconscionable, where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . ., and vice versa." *Id.; see also, Kilgore*, 718 F.3d at 1058. Courts may find a contract as a whole or any clause of the contract to be unconscionable. *Id.* (internal quotation marks omitted). Moreover, the FAA's liberal policy favoring arbitration requires that a state's unconscionability rules cannot facially discriminate against enforcement of arbitration agreements. *Id.* at 750.

Procedural unconscionability "focuses on the factors of surprise and oppression" in the making of the agreement. *Kilgore*, 718 F.3d at 1059 (allowing party to opt-out of arbitration and clearly labeling and boldfacing arbitration provision in the agreement militates against finding unconscionability); *Sanchez*, 353 P.3d at 750 (under California law, contracts of adhesion are not per se procedurally unconscionable). On the other hand, substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term. *Id.* (provision banning class-action claims is not substantively unconscionable because such class action bans are permitted under United States Supreme Court precedent; requiring consumer party to pay arbitration fees is not unconscionable as the risk that consumer party cannot afford arbitration fees is too speculative.) The evaluation of unconscionability is highly dependent on context, and often "requires inquiry into the commercial setting, purpose, and effect of the contract or contract provision." *Sanchez*, 353 P.3d at 749. "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* Plaintiffs cannot demonstrate that the Arbitration Agreements are either procedurally or substantively unconscionable.

The Arbitration Agreements are not procedurally unconscionable because the terms of the Agreements are laid out in conspicuous boldfaced type prior to the signature line under the

conspicuous heading "WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT."
Novorot Great Plains loan agreement, Compl. at Exh. 13 at 8-11(emphasis in original); Brice
Great Plains loan agreement Compl. at Exh. 12 at 6-7; Williams Plain Green loan agreement,
Exh. A, Smith Decl. at Exhibit 2 at 8-11. In addition, Plaintiffs do not allege that the terms of the
Arbitration Agreements were concealed from them or misrepresented. To the contrary, the terms
of the Arbitration Agreements were repeatedly disclosed to Plaintiffs who were requested to read
and acknowledge their acceptance of same.   The Arbitration Agreements are thus not
procedurally unfair.

The Arbitration Agreements are likewise not substantively unfair.  They call for the use
of a well-recognized dispute resolution organization (i.e., JAMS, AAA, or CPR).  They also call
for the arbitration to take place within 30 miles of Plaintiffs' homes at the election of the
Plaintiff.   The cost of the arbitration is borne by the Native American Lenders, win or lose.
Even more, the Arbitration Agreements provide for the recovery of attorney fees if the Plaintiffs
prevail. *See* Novorot Great Plains loan agreement, Compl. at Exh. 13 at 10; Brice Great Plains
loan agreement Compl. at Exh. 12 at 7; Williams Plain Green loan agreement, Exh. A, Smith
Decl. at Exhibit 2 at 10. The fairness of these terms belies any argument that the Arbitration
Agreements are substantively unconscionable.

> 3.     *Plaintiffs' likely arguments concerning factually distinguishable cases are
> not to the contrary.*

While any questions concerning the appropriate law to apply should be left for the
arbitrator to decide pursuant to binding Supreme Court precedent, in the event this Court
determines that it and not the arbitrator should evaluate choice of law, this Court should find that
the Arbitration Agreements do not renounce the application of all federal law. *See Mastrobuono
v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53 (1995) (noting "the choice-of-law provision
covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither
provision intrudes upon the other"); *Kemph v. Reddam*, No. 13-CV-6785, 2015 WL 1510797, at
*4 (N.D. Ill. Mar. 27 2015) (compelling arbitration because challenges to "choice law" and
"choice of forum" clauses are not specific challenges to delegation clause as the arbitrator is free

to "accept the dispute, find the choice-of-law provision is unenforceable, and determine what default law should apply").

Although the Complaint is silent with respect to enforceability of the Arbitration Agreements, Plaintiffs and their counsel are not new to this issue. Nevertheless, the Haynes Defendants expect Plaintiffs to rely on the Fourth Circuit's decisions in *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017), and *Hayes v. Delbert Services Corp.*, 811 F.3d 666 (4th Cir. 2016) in an attempt to avoid their agreements to arbitrate. Those cases found arbitration agreements that applied tribal law to the exclusion of federal law unenforceable. Not only are *Hayes* and *Dillon* distinguishable and therefore inapplicable, those decisions also support the Haynes Defendants' request that arbitration be compelled.

The Arbitration Agreements at issue do not reject or preclude the application of federal law, but rather expressly invoke the application of federal law. Unlike in *Hayes* and *Dillon*, the Arbitration Agreements do not contain an express waiver or disclaimer of federal law.[6] To the contrary, they do the exact opposite, invoking federal law, noting that the Agreements are "governed by Tribal Law and such federal law as is applicable under the Indian Commerce Clause of the Constitution of the United States of America" and that "[t]he Lender may choose to voluntarily use certain federal laws as guidelines for the provision of services." *See, e.g.*, Novorot Great Plains loan agreement, Compl. at Exh. 13 at 8. And, while the loan agreement couches such compliance with federal law as voluntary, under the law of the both tribes, the compliance is mandatory.[7] As Plaintiffs' Arbitration Agreements do not disclaim the application

---

[6] Earlier versions of the Plain Green and Great Plains loan agreements contained different language. The difference in this language, however, does not compel a different result as even earlier versions invoked a valid, existing arbitral forum and tribal law allowing for the application of federal and Montana or Oklahoma law. Moreover, those earlier versions are supplanted by subsequent agreements expressly invoking applicable federal law.

[7] *See, e.g.,* Otoe Missouria Tribal Consumer Financial Services Ordinance, §5.2(a), that requires licensees to comply with:

> all applicable federal and Tribal consumer protection law, including, but not limited to: The Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5301 et seq., including the Consumer Financial Protection

---

-20-

of federal law, and in fact embrace applicable federal law, the Arbitration Agreements cannot be said to prospectively waive federal substantive rights as in *Hayes* and *Dillon*.[8]

Moreover, as discussed above, both the Chippewa Cree and Otoe-Missouria tribes adopt federal and state law. *See Gunson*, 43 F. Supp. 3d at 1400 n.2 ("Under Chippewa Cree tribal law, the Court 'may apply laws and regulations of the United States or the State of Montana.'"); Chippewa Cree Tribal Lending and Regulatory Code § 10-4-108(c) (noting Tribal Consumer Protection Board is empowered to ensure Lender's compliance with "applicable Federal

> Act, 12 U.S.C. § 5481 *et seq.*, and, the restrictions on Unfair, Deceptive, or Abusive Acts or practices, 12 U.S.C. § 5531, *et seq.*; the Consumer Credit Protection Act, 15 U.S.C. Chapter 41, including the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, 12 C.F.R. § 226; the Fair Credit Billing Act, 15 U.S.C. § 1666a; the Consumer Leasing Act, 15 U.S.C. § 1667 *et seq.*; 12 CFR § 213 *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., 12 C.F.R. § 222; the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., 15 C.F.R. § 202; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., 16 C.F.R. § 901; and, the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*, 12 C.F.R. § 205. Also, the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*, 16 C.F.R. §§313 and 314; the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 *et seq.*; the Controlling the Assault of Non-Solicited Pornography and Marketing Act, 15 U.S.C. § 7701 *et seq.*; the Military Lending Act, 10 U.S.C § 987, 32 C.F.R. § 232; the Servicemembers' Civil Relief Act, 50 U.S.C. App. § 501 *et seq.*; the Telephone Consumer Protection Act, 47 U.S.C. § 227, 47 CFR § 64.1200 *et seq.* ; the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*, 12 U.S.C. §§ 1829b, 1951-1959; the Anti-Money Laundering Act, 18 U.S.C. § 1960; and, the Telemarketing Sales Rule, 16 C.F.R. § 310.

*Id.* (available online at
http://www.omtribe.org/useruploads/files/approved_ordinance_2018_pdf.pdf )

[8] It is also black letter law that there is also no prospective waiver of federal rights simply through the application of foreign law.  Since its 1972 decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ("*The Bremen*"), the Supreme Court has consistently required courts to enforce arbitration agreements that require arbitrators to faithfully apply the laws of foreign nations to the exclusion of the laws of the United States.  That is because the FAA requires courts to abandon the "parochial concept that all disputes must be resolved under our laws and in our courts."  *The Bremen*, 407 U.S. at 9; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629-30 (1985) (permitting foreign arbitration to go forward under foreign law "even assuming that a contrary result would be forthcoming in a domestic context," and noting that "the decision in *The Bremen* clearly eschewed a provincial solicitude for the jurisdiction of domestic forums.").  This line of cases is unbroken in actions before the United States Supreme Court.

Consumer Protection Laws"); § 10-6-101(b) ("The Consumer has the legal right to file a complaint that alleges any/all violations of this Title and any/all applicable Federal law relating to their Loan"); CFR Court of Indian Offenses, 25 CFR § 11.500 (stating that in Otoe-Missouria civil cases "any laws of the United States may apply" and "matters that are not covered by the laws or customs of the tribe, or by applicable Federal laws and regulations, may be decided by the Court of Indian Offenses according to the laws of the State in which the matter in dispute lies"). Accordingly, the Arbitration Agreements' inclusion of Tribal law allows for the application of federal law, a fact not present in the *Hayes* or *Dillon* decisions and further validates the fairness of the Arbitration Agreements and the arbitrator's ability to issue rulings based on substantive law.

Furthermore, even for any arbitration agreements containing similar language as in dispute in *Dillon* and *Hayes*, those cases are still distinguishable. The defendant in *Hayes* attempted to use the waiver of federal law in the Western Sky arbitration agreements to bar plaintiffs from pursuing federal claims under the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act. Conversely, the Haynes Defendants do not assert that Plaintiffs are barred from pursuing federal claims, but only seek to enforce the parties' agreement to arbitrate these claims.  Plaintiffs can, and should, raise such arguments to the Arbitrator to the extent their claims are challenged.

The *Hayes* decision, on which *Dillon* is based, is also distinguishable because it follows a series of cases involving the Western Sky arbitration agreements that are factually very different from the present situation.[9] Specifically, in *Inetianbor v. Cashcall, Inc.*, the Eleventh Circuit found Western Sky's arbitration agreement invalid due to the absence of an available arbitrable forum. 768 F.3d 1346, 1356 (11th Cir. 2014). The Eleventh Circuit's holding, however, was based on the fact that the plaintiff attempted to arbitrate his dispute with the lender and was informed by the Cheyenne River Sioux Tribe that the arbitration procedure called for in

---

[9]  In addition, the arbitration agreement at issue in Hayes required an "unknown 'authorized representative' of the Tribe" to conduct the arbitration. This provision is not present here; instead, the Arbitration Agreements provide for   AAA, CPR, or JAMS arbitrator to preside over the arbitration.

the loan agreement, an arbitration conducted by a Tribal elder, did not exist. *See id.* Subsequent cases invalidating the Western Sky arbitration agreement are tainted by and rely on *Inetianbor* for the proposition that the arbitration forum called for in the agreements did not, in fact, exist. *See, e.g., Jackson v. Payday Fin., LLC*, 764 F.3d. 765, 770-71 (7th Cir. 2014). In contrast, there are no allegations that Plaintiffs attempted to avail themselves of the arbitration process called for the in the Arbitration Agreements, nor any allegations that they found the forum unavailable. In fact, it is undisputed that the arbitral forum called for in Plaintiffs' Agreements—one of JAMS, AAA, or CPR—is available. *See, e.g.*, AAA website, https://www.adr.org/ (July 16, 2018); JAMS website, https://www.jamsadr.com/ (July 16, 2018).

Similarly, in *Dillon*, while recognizing that the court must examine "as a matter of law [whether] the 'choice-of-forum and choice-of-law clauses operate [] in tandem as a prospective waiver of a party's right to pursue statutory remedies," the court did not analyze the choice-of-forum provision in the arbitration agreements. 856 F.3d at 334. Here, there is no dispute that the choice-of-forum in the Arbitration Agreements, namely an arbitration conducted by either AAA or CPR within 30 miles of Plaintiffs' homes, is fair. Accordingly, looking at the choice-of-forum and choice of law in tandem, as instructed by *Dillon*, there is no prospective waiver of rights.

Finally, any arbitration decision is ultimately subject to review by an appropriate district court pursuant to the FAA. 9 U.S.C. §§ 9, 10. If, after the arbitration actually occurs, Plaintiffs believe that the arbitration process was unfair or denied them their rights, they can make those arguments in federal court. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637-38 (1985) (finding that a foreign choice of law provision does not trigger application of the prospective waiver doctrine). Waiver of rights and remedies is not an issue that is ripe for final determination until the federal court is asked to enforce an arbitrator's decision. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540-41 (1995). Accordingly, this Court should defer ruling on this issue until after the arbitration.

## IV.    CONCLUSION

This case belongs in arbitration – the forum selected by the parties *ex ante* to decide all disputes, including arbitrability.  The clear delegation provision in the Arbitration Agreement

1    requires as much.  As such, this Court should, pursuant to the section 4 of the FAA, order this

2    case stayed and sent to arbitration where the arbitrator will make determinations as to issues

3    such as enforceability.

4

5    DATED:  October 10, 2018

6                                              By       /s/ Anna S. McLean
                                                         Anna S. McLean (Cal. Bar No. 142233)
7                                                        Daniel R. Fong (Cal. Bar No. 311985)
                                                         SHEPPARD MULLIN RICHTER & HAMPTON
8                                                        LLP
                                                         Four Embarcadero Center, 17th Floor
9                                                        San Francisco, CA 94111-4109
                                                         Telephone:    (415) 434-9100
10                                                       Facsimile:    (415) 434-3947

11

12                                                       Richard L. Scheff (admitted *pro hac vice*)
                                                         Jonathan P. Boughrum (admitted *pro hac vice*)
13                                                       David F. Herman (admitted *pro hac vice*)
                                                         ARMSTRONG TEASDALE, LLP
14                                                       1500 Market Street, Fl. 12, East Tower
                                                         Philadelphia, PA  19102
15                                                       Telephone:  215.246.3478

16                                                       Attorneys for Defendants
17                                                       *L. Steven Haynes and Haynes Investments, LLC*

18

19

20

21

22

23

24

25

26

27

28

                                                                              DEFENDANTS' MOTION TO COMPEL ARBITRATION