1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIMETRA BRICE, *et al*.,

Plaintiffs,

v.

HAYNES INVESTMENTS, LLC., *et al*.,

Defendants.

Case No.  18-cv-01200-WHO

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

KIMETRA BRICE, *et al*.,

Plaintiffs,

v.

MIKE STINSON, *et al*.,

Defendants.

Case No.  19-cv-01481-WHO

As clarified by their Reply, plaintiffs in these related cases seek to certify the following classes:

> All individuals who resided in California at the time he or she: (i) obtained a loan(s) from Great Plains Lending, or (ii) obtained a loan(s) from Plain Green prior to June 1, 2016.

Reply ISO Motion for Class Certification (filed in Case No. 19-cv-01481, Dkt. No. 149) at 10. For the reasons discussed below, plaintiffs' motion is GRANTED.

## BACKGROUND

The parties are intimately familiar with the factual background of these cases.  Plaintiffs and proposed named class representatives Kimetra Brice, Earl Browne, and Jill Novorot are (or for part of the class period were) California residents who took out short term loans ("Loan

United States District Court
Northern District of California

1  Agreements") with allegedly illegally high rates of interest from Great Plains Lending, LLC

2  and/or Plain Green, LLC.  The remaining defendants in these cases are alleged to be founders,

3  funders, and/or owners of now-defunct Think Finance, LLC,[1] which was the entity through which

4  the allegedly illegal "Tribal Lending Scheme" was organized, financed, and run.[2]

5       As part of the settlement of the claims asserted against Think Finance in the Bankruptcy

6  Court for the Northern District of Texas and of claims asserted by classes of consumers in the

7  Eastern District of Virginia, in *In re Think Finance, LLC*, Case No. 17-33964 and *Gibbs, et al. v.*

8  *Plain Green, LLC*, et al., Case No. 3:17-cv-495 (E.D. Va.), plaintiffs have access through

9  Settlement Administrator RSM US LLP ("RSM") to underlying consumer-level account

10  data from Think Finance for loans made to consumers in the names of Great Plains Lending LLC

11  and Plain Green LLC.  *See* Declaration of RSM US LLP, Dkt. No. 134-2.  Through that data,

12  plaintiffs argue both that the California class members covered by the class definitions can be

13  identified and that the alleged aggregate damages are adequately supported for purposes of class

14  certification.[3]

15                              **LEGAL STANDARD**

16       "Before certifying a class, the trial court must conduct a rigorous analysis to determine

17  whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza v. Am. Honda*

18  *Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted).  The party

19  seeking certification has the burden to show, by a preponderance of the evidence, that certain

20  prerequisites have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–50 (2011); *Conn.*

21

22  [1] The remaining defendants in Case No. 19-cv-01481 are Michael Stinson, Linda Stinson, 7HBF

23  No. 2, Ltd., Startup Capital Ventures, L.P., and Stephen J. Shaper (the "Shareholder Defendants").
    The remaining defendants in Case No. 18-cv-01200 are Haynes Investments, LLC, and L. Stephen
    Haynes (the "Haynes Defendants").

24
25  [2] Details regarding the alleged Tribal Lending Scheme are explained in my March 12, 2019 Order
    Denying Pending Motions in Case No. 18-cv-01200 (Dkt. No. 127) and my November 1, 2019
    Order Denying Motion to Compel, in Case. No. 19-cv-01481 (Dkt. No. 65).

26
27  [3] As briefly discussed below, defendants challenge the accuracy of that data by identifying that for
    one of the named class representatives – Earl Browne – the data is faulty because it includes loans
    that Browne took out while he was not a resident of California as well as loans he took out while a
28  resident of California. That single error does not make plaintiffs' reliance on RSM data
    problematic for purposes of this motion.

2

1   *Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011).

2       Certification under Rule 23 is a two-step process.  The party seeking certification must first

3   satisfy the four threshold requirements of Rule 23(a).  Specifically, Rule 23(a) requires a showing

4   that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are

5   questions of law or fact common to the class; (3) the claims or defenses of the representative

6   parties are typical of the claims or defenses of the class; and (4) the representative parties will

7   fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  The party seeking

8   certification must also establish that one of the three grounds for certification applies. See Fed. R.

9   Civ. P. 23(b).

10      The process of class-certification analysis "may entail some overlap with the merits of the

11  plaintiff's underlying claim."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455,

12  465–66 (2013) (internal quotation marks omitted).  However, "Rule 23 grants courts no license to

13  engage in free-ranging merits inquiries at the certification stage." *Id*. at 466. "Merits questions

14  may be considered to the extent—but only to the extent—that they are relevant to determining

15  whether the Rule 23 prerequisites for class certification are satisfied."  *Id*.

16                                    **DISCUSSION**

17  **I.   THE CLASS ACTION WAIVER CANNOT BE ENFORCED INDEPENDENT OF
          THE REJECTED ARBITRATION AGREEMENT**
18
19      Defendants argue, first, that all Great Plains and Plain Green Loan Agreements plaintiffs

20  entered into have class action waiver provisions that should be enforced, despite my prior orders in

21  both cases finding the arbitration agreements unenforceable.  *See* March 2019 Order in Case No.

22  18-cv-01200 ("March 2018 Order," Dkt. No. 127); *see also* November 2019 Order in Case No.

23  19-cv-01481 ("November 2019 Order," Dkt. No. 65).  In those orders, I denied defendants'

24  motions to compel arbitration under the prospective wavier doctrine given the Agreements'

25  imposition of tribal laws that undermined the statutory remedies that plaintiffs were entitled to

26  assert.  I concluded that the "Plain Green and [Great Plains Lending] arbitration agreements are

27  unenforceable because they are prospective waivers of plaintiffs' rights and remedies."  March

28  2018 Order at 1.  I explained, "the choice-of-law provisions regarding the lenders and the loan

1   agreements [imposing tribal law], in conjunction with arbitration agreement provisions restricting

2   the law the arbitrator may apply, create an unambiguous waiver of rights and the agreements and

3   are therefore unenforceable." *Id.* at 17.  I reaffirmed these conclusions in the November 2019

4   Order at 4-8.

5          Defendants contend that the class action waiver provisions in the Loan Agreements should

6   nonetheless be enforced because they are severable from the problematic Arbitration Agreements.

7   However, the text of the class action waiver is located wholly *within* the "Waiver of Jury Trial and

8   Arbitration Agreement" that I found to be unenforceable.  *See* Declaration of Michael C. Witsch

9   (Dkt. No. 145-1), Ex. 5 (Browne Great Plains Loan) at Browne 000019-000022), Ex. 7 (Brice

10  Great Plains Loan) at BRICE000027, Ex. 8 (Browne Plain Green Loan, same).  The section

11  containing the class action waiver – the "Waiver of Jury Trial and Arbitration Agreement" – has

12  been nullified.  And in the November 2019 Order, I rejected the argument that the impermissible

13  choice-of-law provisions could be severed from the remainder of the Arbitration Agreement

14  because the impermissible choice-of-law provisions "permeated" the Arbitration Agreement and

15  severing them would leave nothing "meaningful to enforce" in the Arbitration Agreement.

16  November 2019 Order at 8.  The whole of the Arbitration Agreement, including the *partial*

17  sentences containing the class action waiver, is unenforceable.  *See also Gingras v. Think Fin.,*

18  *Inc.*, 922 F.3d 112, 128 (2d Cir. 2019), *cert. denied sub nom. Sequoia Capital Operations, LLC v.*

19  *Gingras*, 140 S. Ct. 856 (2020) (addressing the Plain Green Loan Agreements and finding "no

20  basis therefore to sever any particular provision of the arbitration agreement because, given the

21  pervasive, unconscionable effects of the arbitration agreement interwoven within it, nothing

22  meaningful would be left to enforce.").  The remaining provisions of the Loan Agreements,

23  however, remain in force.

24  **II.     BROWNE DOES NOT LACK STANDING GIVEN DISCLOSURES IN**
          **BANKRUPTCY PROCEEDINGS**
25

26         Defendants argue that Browne lacks standing to pursue his claims because during the

27  pendency of these two actions Browne completed a Chapter 7 bankruptcy and failed to identify his

28  claims in these cases on his bankruptcy schedules.  That failure, according to defendants, means

United States District Court
Northern District of California

4

that Browne's claims belong to the bankruptcy trustee and that Brown lacks Article III standing to pursue them. *See, e.g., Cusano v. Klein*, 264 F.3d 936, 945–46 (9th Cir. 2001) (noting that the bankruptcy code places "an affirmative duty" on petitioners to schedule their assets and liabilities, and if a petitioner fails "properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to" the petitioner upon discharge). The rationale of the disclosure obligation is to give the trustee sufficient notice of potential assets in order to conduct a proper evaluation. *Id*. at 946.

In Reply, plaintiffs state that Browne disclosed (in November 2018, prior to discharge) his claims against the Haynes defendants. Defendants do not dispute this. Plaintiffs also note that Browne's discharge order was filed *before* the filing of the 2019 Complaint against the Shareholder Defendants and that his amended Schedules A and B (filed in May 24, 2019 after discharge but in connection with administration of the bankruptcy) disclosed his claims related against a host of defendants (including the Haynes defendants and Think Finance) based on his loans with Plain Green and Great Plains. While not mentioning the claims against the Shareholder Defendants filed after discharge, plaintiffs contend that the sum of these disclosures put the Trustee on notice of Browne's claims related to his short-term loans. *See Cusano*, 264 F.3d at 946 (rejecting argument for further detail was required regarding existing claims because added "detail would not have revealed anything that was otherwise concealed by the description as it was, which provided inquiry notice to affected parties to seek further detail if they required it."); *see also In re Johnson*, 361 B.R. 903, 904, 906 (B.A.P. 9th Cir. 2007) (disclosure of "Class Action Suit" with "unknown" value sufficient where disclosure was not misleading and provided trustee sufficient basis to conduct investigation). I agree. The disclosure of at least three lawsuits regarding these and similar short-term loan agreements was sufficient to put the trustee on notice to investigate.

## III.   ASCERTAINABILITY IS NOT A BARRIER TO CLASS CERTIFICATION

Turning to the Rule 23 requirements, defendants' primary argument against class certification is that plaintiffs' motion is fatally deficient because of ascertainability problems.[4]

---

[4] There is no dispute that given the thousands of loans provided to California residents, the classes are sufficiently numerous under Rule 23.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants assert that class members cannot be identified without extensive, individualized fact finding because the data plaintiffs rely on (provided by the settlement administration in the nationwide class action settlements in the Think Finance Bankruptcy and class actions recently concluded in the Eastern District of Virginia, RSM) contains errors and is not reliable.[5]

The error identified by defendants is that none of the loans Browne took out are included in the California data provided by RSM and that the RSM data indicates that Browne lived in Alabama.  According to defendants, that error calls into question either the accuracy of the RSM data or the veracity of plaintiffs counsels' representation that Browne is a member of the California class.  Plaintiffs respond that one error out of 125,000 unique consumers does not fatally undermine the RSM data.  Plaintiffs explain that Browne moved from Alabama to California in 2015; while some of his loans should be excluded, he took out at least one loan with Great Plains in August 2016, which would make him a member of the California class.

The attack on Browne and defendants' other attacks on the RSM data (*e.g.*, that RSM cannot vouch for the accuracy of the data because it was collected and provided to RSM by Think Finance) do not preclude class certification.  Defendants were intimately connected to Think Finance (and their counsel in this case represented Think Finance in the Texas proceedings).  If they had good faith bases to challenge the reliability of the RSM data, they could have presented information based on personal knowledge explaining why RSM's data is not generally reliable.  Defendants did not do so.  The RSM data has been used in at least three proceedings to effectuate class action settlements.  On this record, despite the error regarding Brown's initial place of residence, the RSM consumer-level data for each transaction provides a fair basis for identifying the scope of the class and aggregate damages for the California class.  The one error regarding Browne appears to have at most a *de minimis* impact on the class size and potential aggregate damages, and if anything underreports defendants' potential liability.  Moreover, the reliability of

_____

[5] As part of that administration, Think Finance provided RSM with consumer-level account data from Think Finance for loans made to consumers in the names of Great Plains Lending LLC, Plain Green LLC, and the First Bank of Delaware.  RSM was provided with loan data consisting of 1,877,050 loans for 1,045,248 consumers. RSM Declaration (Dkt. No. 134-2), ¶¶ 2-3.

1    the data can be tested and challenged by defendants on summary judgment or at trial and

2    individual entitlement to recovery proved up post-trial (if plaintiffs are successful) in the claims

3    administration process.

4          As a further matter, the Ninth Circuit has rejected an ascertainability requirement for class

5    certification.  *See Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1133 (9th Cir. 2017).  But even

6    if one existed, the potential under-inclusiveness of the RSM data for individuals in Browne's

7    position (having moved in or out of California during the class period) does not impact

8    ascertainability.  The proposed class definition is limited to loans taken out by California

9    residents.  If someone was not a California resident when a loan was taken out, that person is not a

10   member of the class for purposes of that loan.

11         Defendants raise a final attack on the reliability of RSM's data, but it is really a challenge

12   to the use of the RSM data to estimate class-wide damages.  Defendants argue that the potential

13   damages in this case cannot be based upon a simple manipulation of RSM data, such as by

14   subtracting the total amount borrowed from the amount paid, and assuming the difference was

15   interest as of an arbitrary end date – which according to defendants is how RSM determined

16   damages for plaintiffs in the Texas and Virginia settlements.  Oppo. at 17-19.  They argue that

17   such an estimate is not accurate when considering loans that were "written off" or that were

18   "rolled over" for future collection.  *Id*.  However, evidence regarding how many loans were

19   written off or rolled over is presumably within defendants or defense counsels' possession and can

20   be introduced on summary judgment or trial.  That evidence would potentially impact the

21   aggregate damages award.  But the presence of some unknown amount of written or rolled over

22   loans does not create an ascertainability issue or otherwise create a barrier to class certification.

23   **IV.    COMMON ISSUES PREDOMINATE**

24         Defendants argue that commonality is not satisfied because individualized issues will

25   predominate given: (i) significant variations in the loan terms (*e.g*., Plain Green and Great Plains

26   loan agreements have unidentified differences in language and have different interest rate and

27   duration provisions); (ii) the two different loan-originating entities used different marketing and

28   had different collection practices; (iii) proving unjust enrichment is too individualized given the

United States District Court
Northern District of California

1   need to determine which plaintiffs were harmed (as some portion of the class may have not paid

2   back more than they borrowed) and the complex financing arrangements between the defendants

3   (using credit default swaps, loan servicing agreements, finders' fee arrangements etc.); (iv)

4   because RICO requires proof of an injury to business or property, that will exclude those who

5   received more on their loans than they paid; (v) similarly, because the usury and UCL claims

6   cover only those who paid illegal interest have a claim, consumers who received more than they

7   paid or those who only paid a non-usurious amount of interest would need to be excluded; and (vi)

8   statute of limitations issues predominate given that each set of defendants' conduct began and

9   ended at different points in time.

10          None of these arguments defeat predominance.  The recovery by classes of plaintiffs

11  against the different sets of defendants will depend on what the evidence at summary judgment or

12  trial shows concerning when each set of defendants' conduct began and ended.  To be sure, that

13  implicates various class members' entitlement to recover under their claims from each set of

14  defendants.  But that is simply math and can be easily addressed by subclassing (if appropriate) or

15  distribution formulas.  The differences in loan terms (*e.g.*, duration, rates of interest charges) can

16  be addressed by analysis of the RSM data.  That the loan agreements had other, different language

17  and that the different tribal lenders may have used different marketing or collection methods does

18  not undermine commonality or predominance because those differences are not material to the

19  claims asserted.  The claims asserted are all based on the theory that a usurious or otherwise illegal

20  rate of interest was charged.

21          In the end, plaintiffs will be required to show how they have accounted for the issues

22  defendants identify, *e.g.,* excluding loans where plaintiffs received more than they paid on the

23  loans, loans that were extended or discharged, or loans where particular plaintiffs did not pay a

24  usurious amount of interest.  Those analyses appear to be well within the ability of plaintiffs and

25  their experts to make based on available or securable data, and defendants will be able to

26  challenge those showings at summary judgment or trial.  These discrete issues do not undermine

27

28

predominance.[6]

Finally, whether or not these defendants may be liable for particular violations – given their knowledge of and involvement in the Tribal Lending Schemes, how they were compensated or otherwise benefitted, and any agency defense or RICO proximate cause defense – are issues common to the class and more appropriately tested on summary judgment. That there are differences among defendants does not create predominant plaintiff-specific individualized issues. It just means that liability for the separate defendants will be determined separately. That remains a common, predominant question.

## V.     SUPERIORITY IS ESTABLISHED

Defendants argue that superiority cannot be established given the difficulties in "managing" the RICO and unjust enrichment claims because of the rejected arguments above. That damages might need to be calculated given the specific terms of individual loans (interest paid over the loan duration) does not make this case unmanageable. There are numerous ways those issues can be managed, including through expert analysis and claims administration processes following an aggregate damages verdict.

## VI.    TYPICALITY AND ADEQUACY OF CLASS REPRESENTATIVES

Finally, defendants attack the typicality and adequacy of the class representatives.

---

[6] Defendants' reliance on cases where unjust enrichment and restitution claims were not certified for class treatment is unpersuasive. In each of those cases, the claims depended on whether plaintiffs were misled by defendants' conduct. For example, in *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 995 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), applying Colorado law, the court concluded "that individualized inquiries concerning the reasons each class member purchased Wesson Oils will be required in order to determine whether ConAgra's retention of the purported price premium would be 'unjust' or otherwise inequitable." *See also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014), *abrogated by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) ("Whether Home Depot's receipt of funds for the damage waiver was unjust or inequitable, thereby justifying restitution, depends on whether Home Depot told its tool rental customers that the waiver was an optional product. This determination [] necessarily rests on individualized determinations about the language of the contract signed by the customer, the placement and content of any signs, and the oral representations from Home Depot employees relating to the damage waiver."). Here, given the claims at issue and plaintiffs' theory of defendants' liability, the focus will be on defendants' conduct; what they knew about the tribal lending schemes, their roles in those schemes, and what benefits they received. That proof will be common. For similar reasons the fraud and misrepresentation-based RICO cases relied on by defendants, discussing individualized reliance requirements, do not provide a relevant analogy to the usury-based claims. *See, e.g., Poulos v. Caesars World, Inc.*, 379 F.3d 654, 659 (9th Cir. 2004).

1    Regarding differences in the terms of the Plain Green and Great Plains loans, defendants identify

2    no differences that are *material* between the loan documents that would create atypicality given

3    the claims asserted.

4         Defendants also argue that plaintiffs are inadequate because each class representative's

5    deposition showed that they were not well-versed in the duties that class representatives are

6    required to perform on behalf of the class or the specific roles the remaining defendants are

7    alleged to have played in these transactions.  I have reviewed the deposition testimony excerpts

8    provided by defendants; nothing therein suggests that Brice, Browne, or Novorot are inadequate.

9    Each demonstrated basic knowledge of the case (*e.g.*, that they are suing on behalf of a class given

10   the illegal interest rates).  Their lack of personal knowledge about the role of these defendants

11   (other than that the defendants are related to Think Finance, Great Plains, or to Plain Green) in the

12   admittedly complex tribal lending schemes is no bar to their serving as class representatives.

**CONCLUSION**

14        Plaintiffs have met each of the required showings under Rule 23.  The following classes

15   are hereby certified:

16            All individuals who resided in California at the time he or she: (i)
              obtained a loan(s) from Great Plains Lending, or (ii) obtained a
17            loan(s) from Plain Green prior to June 1, 2016.

18        The parties shall meet and confer and agree to a Notice Plan or submit any disputes

19   regarding Notice for my determination through a five-page joint letter identifying their

20   differences, on or before May 11, 2021.

21        **IT IS SO ORDERED.**

22   Dated: April 23, 2021

23

24   _____

25   William H. Orrick
     United States District Judge

26

27

28

United States District Court
Northern District of California